Our next case on the call of the docket today is Agenda No. 2, Case No. 11-0283, People v. Washington. Counsel for the appellant? Mr. Chief Justice, and may it please this Honorable Court, Ms. Moran, I am Assistant State's Attorney Ashley Romito of the Cook County State's Attorney's Office on behalf of the people of the State of Illinois. The clear guidelines from this Court in the well-settled law have always directed trial judges when faced with the question of whether to tender an uncharged offense jury instruction is to make an assessment based upon the evidence in the trial record. In other words, it is the record evidence that should drive the decision whether to tender a jury instruction, and that is the case in the status of the law regardless if the defense makes that request, the State makes that request, or the Court contemplates it sua sponte. And that is exactly what the trial judge did here in this case. When asked by the defense for a lesser-degree, second-degree murder jury instruction based upon an unreasonable belief in self-defense, the trial court properly weighed the evidence and determined based upon the two diametrically opposed points of view, there simply, and to quote her, was not a scintilla of evidence to support that instruction. The defendant retrieved a gun, not due to any fear, but due to secret, stashed it from the police, and returned to a scene of a heated argument and shot the unarmed victim as he walked away in a fit of rage. If you believe the defendant's testimony, on the other hand, he pulled a gun and shot only to defend himself rather than be shot from a hostile adult from a period of just a feet away, had pulled a gun, unmistakably a firearm, a wooden handle revolver, pointed it in his direction and was going to shoot. That had the wherewithal actually to attempt to disarm him and shoot at his arm, but shot him nevertheless in self-defense. The court properly, logically rationalized that if you were to believe the defendant's version of offense, you could never, no matter which way you turn those events backwards, forwards, upside down, determine that the defendant would have been unreasonable in firing those gunshots back. Importantly, the only argument presented to the trial judge in this case was that she had no discretion when she had made the threshold finding that the defendant had presented enough elements through his own testimony to warrant a self-defense instruction. And what was presented to the judge was that you have no discretion. Once you've found that, you must, as a mandatory counterpart or a per se rule, give me a second-degree murder jury instruction. The court pointed to case law that said that that is not the case. In this court, while having previously and repeatedly unequivocally held that the concepts of a reasonable belief in self-defense, justified force, is not mutually exclusive with an unreasonable belief in self-defense, the defendant's not forced to choose. The jury instructions will not be tethered to his trial strategy but the evidence at case. But similarly, the people assert, is there not mutually exclusive? They certainly shouldn't be ipso facto mandated as being a mandatory counterpart, inextricably intertwined or mutually inclusive in all occasions. Counsel, is it your position that because the defendant could have a reasonable, although mistaken, belief that he could act in self-defense, he was not entitled to an instruction on voluntary manslaughter based upon an unreasonable belief? Is that your position? No. Well, that was the situation in Lockett many years ago that the state presented back in 1980, saying he was excluded. What I'm saying is that there's no evidence to support an irrational belief. If the defendant's version of events were to be believed, even if that gun was a BB gun, certainly he would have ultimately been exonerated if the jury had chosen to believe that, but they unequivocally rejected it in a matter of a half hour after days and days of trial. Now, I don't mean to say that it hinges on whether or not there's a mistake. Okay. Explain further the difference in your argument, because the court rejected that argument in Lockett, right? The court rejected the state's position in Lockett, which was because the defendant had available to him, in addition to a traditional self-defense, that mistaken belief would be equally exonerating. Therefore, it would be inconsistent as a matter of law. He was entitled to an unreasonable belief. But this court had already answered that in Joyner, saying the defendant is entitled to as many alternative affirmative defenses or lesser offenses as the evidence will support. And that's my position here today. It depends on what the evidence supports. It shouldn't be based on any per se rule. And it wasn't the question this court called upon to answer in Lockett. Back in the time of Lockett, the far more prevalent question being raised time and time again was courts refusing to give a second-degree murder jury instruction, voluntary manslaughter at the time, prior to the change in the law. Prior to 1961, before the change in the Criminal Code, defendants only had available to them as voluntary manslaughter a provocation defense. They did not have that option of a lesser form of second-degree murder. And there was, it appears to be, looking at the case law, residual hesitation to allowing a defendant to have a second degree if he was putting forth a self-defense. But they were finding they were inconsistent. You couldn't have inconsistent defenses. But that is not the law. And that is exactly what this court has answered time and time again. But this court has never been called to answer the question that it's being asked today. And that is whether or not there is a per se rule. Only the underlying case here, People v. Washington, has gone that far. What about the O'Neill case where the court said it must be given? The O'Neill case really had a different analytical framework. They weren't asked that question. What happened in that case is the State had presented a theory, again, attempting to say the defendant would be precluded as a matter of law, not based upon the evidence that the defendant could not have a lesser form of first-degree murder or murder, I think it was voluntary manslaughter at the time, because of there being a felony at play. And that felony was conceded when the defendant admitted he, along with the co-defendant, were raping a woman. And then somewhere along the line, he decided he needed to use self-defense to kill his co-defendant because he had been enforcing him to do that. The question wasn't really answered. While it parroted some of the language in Lockett, which didn't necessarily, wasn't asked to answer this question. So it was quite a different focal point in O'Neill. O'Neill, the people had waived a position that as a matter of law, the defendant would not be able to proceed on felony murder because they didn't present it in a trial court. They didn't present it, then again, on appeal. And you were in a rather unusual situation in a bench trial where the trial court directed out the felony murder counts in any event. You are relying on, you cited, I think, Anderson and Billings? Billups, yes. Billups. Is it Billings or Billups? I believe it's Billups, the case that came out after this case. Aren't the facts of this case different than those two cases in that the defendant here testified about seeing a weapon and others testified about seeing a weapon in the hands of the victim? Isn't this a different factual setting? Well, they're similar in that they're diametrically opposed version events, where if you were to take the defendant's version of offense as true, no rational trier fact could interpret that as being unreasonable and that wasn't the subject of dispute. In Anderson and in Billups, I think a critical difference is that the defendant's testimony was they never had any gun to begin with and that the victim came armed with a gun and that they had to unarm that victim and that's where the struggle ensued. Even stronger cases than this case, which I say the court absolutely did not abuse of discretion, but that's an abuse of discretion question as opposed to a per se rule. So if you look at Anderson and Billups and to follow the rule that defendant advocates today, those trial courts would be forced to provide a jury instruction that is not based upon the record evidence at trial. And that is just at odds with the entire way we view jury instructions in whether or not to tender one based upon an uncharged offense. Ms. Mermito, under your approach though, would a jury never be able to find the defendant had a subjective but unreasonable belief that a need for deadly force? No, I don't believe so. I think it will turn and be driven as it is in most cases based upon the facts of an individual case. If you were to give the defendant a second degree murder instruction based in this case, it would be based on things that were not spread of record. In other words, rewarding perjury or dealing with somebody exaggerating. I don't quite believe the victim. I don't quite believe the defendant. So maybe something happened somewhere in between and that is just not the way the surrounding jurisprudence has developed on whether or not to give a jury instruction. Cautionary instructions have never been the status of law giving unlimited instructions. It must be based on some tangible piece of evidence in the record. And you just don't have that here. What about the statement in Lockett, we can conceive of no circumstance when a judge could determine as a matter of law that a jury could find the defendant had a reasonable subjective belief the killing was justified, but the jury could not find that the defendant's subjective belief was unreasonable. A very powerful statement. And I think it was a strong message meant to be sent that it would be in the most extreme situations where there is clearly no evidence in the record, credible evidence in the record you could point to. And the court did not conceive of the situation that presents itself in Anderson, that presents itself in Billups, that presents itself in this case. But they certainly didn't use the language that a mandatory counterpart, a prohibition in all cases, and at the end of the day that part of the opinion was dicta. Well, speaking of strong language, how about O'Neill then? When O'Neill observed that Lockett, quote, held that where there is evidence in the record to support a self-defense instruction, a voluntary manslaughter instruction must also be given if tendered by a defendant. And as I pointed out, the analytical framework of that case was different. My point is really this does not require a clear departure of stare decisis insofar as any, I don't think so because the question has never been squarely presented as it is here today. And while there was language, I absolutely acknowledge that it is the rare circumstance where this situation would arise, just like type A, type B murder with respect to felony murder. It happens. Well, Lockett said can conceive of no circumstance, right? And in this particular case, there was a determination made by the trial court that defendants, whether a defendant's subjective belief was reasonable or unreasonable, right? No. Well, the trial judge tended to indicate that she didn't believe the defendant's subjective belief, but he had placed it into evidence. It wasn't a question of whether it would be unreasonable under any set of circumstances. That was not the basis in which the jury instruction was withheld? The basis that there was no evidence of an unreasonable belief. And that has never been responded to. How could it be unreasonable to see? That's what I'm having trouble with, where Lockett said it's a jury determination. O'Neill went a step further. I want to know how you're distinguishing what the court did and how that wouldn't be in violation to start with Lockett. Well, what I have to say is those statements in both those cases were obiter dicta. They weren't the questions presented. The State was still attempting in both those cases to say it's a matter of law, not that there wasn't evidence in the record. Like in Joyner, they were trying to say it's a matter of law because this defendant had available to him an alternative defense in Lockett of a mistaken belief. They didn't argue there wasn't evidence that you could look at it and say that it wasn't rational. Clearly, Lockett is a pivotal case of where you could see, would you think it was a bottle that he was getting or when you're dealing with an old man with a push cart down the street who's acted silly that people are laughing at, that's brandished a smoking pipe and is now throwing some bottles, that suddenly he's going to pull a gun? Well, certainly there's evidence to show that that's irrational. And the same thing, or maybe unreasonable, that you've gone overboard by shooting that man. And the same thing is present in O'Neill, where the defendant testified that he was afraid of his co-defendant and he'd been forcing him to engage in rapes and robberies and a crime spree with him and that once the struggle ensued over, he grabbed his gun. It wasn't that there wasn't evidence. That wasn't the state's theory in both those cases before this court. What the state was trying to say is as a matter of law, those defendants were precluded. So the question of whether or not the record is bereft of anything that can turn a defendant's subjective belief into something that is unreasonable has not been raised before until today. And I have to say, I don't think it's a rule that favors any side. If the state saw their case going in a downward direction and there were diametrically opposed views, we could certainly ask for an instruction and the judge should refuse it under Garcia and matters of the like. And as Justice Garcia does point out in the Billups' opinion, this is just the way the law works. Is the difference here on the reasonable belief, and maybe you can give an example, but it seems to me you're saying in this case the defendant said, I saw a gun, therefore I shot. There's no question about it. If he didn't see the gun, it wouldn't be self-defense. It wouldn't be murder, too. It would be simply murder. If the defendant says, well, I thought I saw the gun or I thought he was pulling a gun, but I wasn't sure, and so I acted. Is that the distinction you're drawing? In many cases, it might. In many cases, it might. And it's not a matter of how precise the defendant's testimony is. It's looking at the evidence in a whole. Is there any way that you could take the defendant's testimony and look at it and say that any rational trier of fact could look at that and not acquit. So a hostile adult after a car accident pointing a gun from you, all the witnesses said it was light from a distance of a few feet away, enough time to see that it is a revolver, that it's got a wooden handle, that he's pointing it at me, and there is no doubt in my mind he's going to shoot, so I had to shoot first. There is no way if you believe that you could say he was unreasonable. That's an invitation to compromise, which the law doesn't tolerate from any side. Okay. And then what is an unreasonable belief where the instruction should be given? It's going to be the vast majority of cases that we see. I am telling you that this is the exception. This is the exception. Anderson is the exception. Phillips is the exception. Perhaps the perfect example is Lockett itself and the cases cited therein as well as the prior cases in the appellate court that have reversed that have all said it's basically been abuse of discretion and have pointed to record evidence determining that we could point to where a jury would support evidence that would support a verdict based upon an unreasonable belief in self-defense. For these reasons and those stated in our brief, then we would ask you to reverse the appellate court's opinion finding that there is a per se rule that second-degree murder based upon an unreasonable belief in self-defense is a mandatory counterpart to all cases where self-defense is and that the judge did not abuse her discretion in this case. And we ask you to remain to decide the remaining issues not decided on appeal. Thank you. Chief Justice Kilbride, your honors, may it please the court. I am Rachel Moran, and I represent the appellee, Melvin Washington. Your honors, to accept the state's argument just made would be to invade the province of the jury and set aside more than three decades of essentially settled law. This court should affirm the decision below, remanding for a new trial, for three reasons. First, this court has already addressed this issue in People v. Lockett and held unequivocally and squarely that where a defendant presents evidence of a subjective belief, that is evidence sufficient for both a self-defense and a voluntary or second-degree murder instruction. Second, even disregarding Lockett and his progeny altogether, the question of whether a defendant's subjective belief was reasonable has always been for the jury and the jury alone to decide. And third, even if this court rejects the per se rule, the facts in this case, contrary to the state's contention, were in fact sufficient to warrant a second-degree murder instruction. Turning to the first point, this court in People v. Lockett set forth a per se rule that where the defendant presents evidence of a subjective belief, that is enough for both self-defense and if the defendant or the state so requests, second-degree murder as well. The state attempts to distinguish Lockett both on its law and its facts, but it's unavailing. Lockett addressed this issue squarely and held that where there is evidence of a defendant's subjective belief, the jury has three options. Not based on what the defendant says or what other evidence is presented, the jury simply has three options. The jury can reject the evidence altogether and find the defendant guilty of first-degree murder. The jury can accept the defendant's or other's testimony and find that it was self-defense. Or the jury can find that the defendant was and did subjectively believe that, but that belief was unreasonable. And in that case, the appropriate verdict would be second-degree murder. How could that third one be? In other words, what's the unreasonableness of the belief here? In this case, it could be. I mean, on the facts of this case. Your Honor, two ways to address that. The first is on the facts of this case, the one thing the state is correct about is that Mr. Washington's testimony alone was a perfect self-defense. He did testify that he saw a gun from a couple feet away. He was able to describe it, and he testified that he believed that gun was going to be used on him and he essentially needed to shoot first. But there's a plethora of other evidence from both the state and other defense witnesses indicating that perhaps they didn't see a gun, but there was evidence of a subjective belief. Your Honors, this is not Anderson. This is not Billups. And just to give a few examples of the facts, Topeka Washington, for example, testified. She was a defense witness, and she testified that Ronald Lee, the man that Melvin shot at, was operated this count of an altercation and of profanities by Ronald Lee. Donald Lee, Ronald's own brother, testified that Melvin came up and pushed Melvin and that Melvin pulled out the gun immediately after this push. And even Wanda Cook, yet another state witness, testified. She was a little too far away to see exactly what happened, but she saw that there was an argument and a physical altercation happening. And so there's a plethora of evidence from other witnesses that by far separates this case from the two cases in the last 30 years that have somehow attempted to distinguish Lockett. Well, what from that plethora of evidence makes it unreasonable? Your Honor, it could be. It makes the defendant's belief unreasonable. I mean, he said the guy had a gun. Yes, Your Honor, but as this Court has often held and is well aware, the jury is free to accept or reject any part of testimony of evidence at a trial. So the jury could, in fact, have decided to reject Melvin's testimony, but if given the opportunity, found that there was other evidence of an unreasonable belief in the need to use self-defense. So found that the gun didn't happen, but the rest did. And People v. Joiner and People v. Everett are both instructive on this point. Both cases from this Court, in Joiner, the Court addressed a similar situation, and this is actually even pre-Lockett, and the Court held that a voluntary manslaughter instruction can be tendered, and this is the important part, even where at variance with the defendant's own testimony. And in Joiner, that was a case far more than Melvin's, where it was pure, perfect self-defense on the part of the defendant. And Joiner held that even regardless of that, there was other evidence to support a voluntary manslaughter instruction. Everett, a similar situation, the defendant testified that the shooting was a complete accident, and yet the Court held that even in that situation, a second-degree murder instruction would have been appropriate based on other evidence, not disregarding the defendant's own testimony. But to turn back, away from the facts, and back to this Court's decision in Lockett, the Court attempts to say that Lockett did not, or excuse me, the State claims that Lockett didn't really squarely address this issue, and that's just wrong. To quote the Court from Lockett, it says, several appellate court opinions have held that if the evidence supports a self-defense instruction, it will also support a voluntary manslaughter instruction. We agree with those cases. Again, we hold that when the evidence supports an instruction, unjustifiable use of force, a tender voluntary manslaughter instruction should also be given. So the State's, really its only attempt to distinguish Lockett is to say, well, it didn't really address that issue, something different was going on. The language is, we hold. Lockett addressed this issue squarely. And several of your honors mentioned People v. O'Neill, which came just four years later. And as your honor pointed out, use the language. Quoted Lockett as saying that where a defendant provides evidence of a subjective belief and requests a voluntary manslaughter instruction, that instruction, quote, must be given. O'Neill, the State says, to quote the State, that question wasn't really answered in O'Neill. Well, I'd like to point the Court to exactly where the question was answered in O'Neill. And again, to quote O'Neill, where there is evidence in the record to support self-defense instruction, a voluntary instruction must also be given if tendered by the defendant. An instruction here on self-defense was warranted. Consequently, we conclude that the tendered instructions on voluntary manslaughter also should have been given. O'Neill addressed this just four years after Lockett. And if there is any question in Lockett as to whether the language was mandatory or not, O'Neill answered that question with a resounding yes. And there hasn't been much confusion about that at all. People v. Edmondson, people v. Lockett, people v. Toney, these are all appellate court cases since those two that have interpreted Lockett and O'Neill as requiring this instruction. The State's attempt to say that there must also be evidence of a reasonable belief, what it's doing is it's creating a false dichotomy. Melvin would certainly agree that there must be evidence in the record to support an instruction. But the evidence here to support the second-degree instruction, the evidence in a case like this is evidence of a defendant's subjective belief. That's all we need to support an instruction on second-degree murder. It's only for the jury to determine whether that belief was reasonable or not. And it invades the province of the jury when the court makes that determination on its own, which is what the trial court here did. It said, well, I don't think there could be any way this could be an unreasonable belief, therefore I'm denying the instruction. That's not appropriate. That's not a situation for the jury to determine. Even outside the context of Lockett, the question of whether a subjective belief is reasonable has always fallen squarely within the province of the jury. This court from People v. Sawyer is instructive on this point. That's from 1986. That the reasonableness of a defendant's subjective belief that he was justified in using deadly force is a question of fact for the jury to determine. Again, there's no equivocation on this point. There's only two cases in 31 years that have found there's any way to distinguish, to suggest that a trial court should be allowed to make this determination, and it's certainly not from this court. To provide an example, in, for example, a sexual assault prosecution where a defendant is accused of having sex with a minor, if the defendant testifies that he believed that person was of age, it's not the trial court's position to sit back and say, let me figure out whether I think this defense was reasonable. The trial court tenders the instruction based on the belief, and it's the jury's job to determine whether that was reasonable. It's not the court's job to do that. Where a defendant has chosen to exercise his constitutional right to a jury trial, then he has the right to have the jury decide the facts. And reasonableness of a belief is a factual question. Your Honors, just briefly, I'd also like to point out that Melvin raised, both in the trial court, the appellate court, and here, the question of, even if this court rejects a per se rule, and rejects any suggestion that the facts in this case support a second degree murder instruction, an instruction was also warranted based on provocation, and the trial court denied that as well. Now, the state contends in its brief that this issue was forfeited. I'd just like an opportunity to respond to that. It's not forfeited because the state addressed this issue on its merits in the appellate court. And if this court looks back at the appellate brief filed by the state in the lower court, the state fully addressed this issue on its merits, and in People v. Washington, the appellate decision, the pinpoint site is 677. The state has an incorrect pinpoint citation in its brief saying that the court below found this issue forfeited. In fact, what the court below did is say that an entirely different issue on unlawful use of a weapon was forfeited, and we agree with that. But the court noted that the state addressed the issue of provocation on its merits, and argued that Malvin did not present sufficient evidence to warrant this instruction. And so a second degree murder instruction was warranted on both counts, and there was evidence even regardless of the per se rule that this court should set forth, there was evidence on both counts to support this. Your Honors, the state has conceded that a second degree murder instruction should be denied only in, quote, the most extreme situations. This is not one of those situations. If you look at the facts of this case, this is not one of the extreme situations. The state has also conceded in its brief that the court should not be reluctant or resistant to tendering second degree murder instructions. The state cannot present and has really made no effort to present a single reason why the instruction should not be given, why this must be a case-by-case analysis rather than a per se rule. As the state acknowledges, and we would also say this rule can favor either the state or the defense, but it is the appropriate rule based on this court's years of precedent. The decision, the rule, the per se rule that Malvin requests respects the role of the fact finder. It adheres to this court's own precedent. It respects the defendant's constitutional right to choose a jury to decide his facts, and it is the rule that the appellate court set forth below. This court should affirm the decision of the appellate court remanding for a new trial, and even if this court does not, as the state acknowledges, there are many undecided issues in the court below, and therefore even if this court rejects Malvin's contention here, the case must go back to the appellate court for decision on the remainder of the issues. Thank you. Thank you, counsel. The appellate court never decided any issue of provocation. While it certainly did spread of record in its opinion, or it spread in its opinion, that a provocation instruction had been requested down below, it did not acknowledge or make any reference to the defendant requesting one on appeal because it did not. As the appellant, defendant is obligated to raise issues in its appeal, and if the state made mention of provocation in responding to that issue or it was raised in the trial courts, it was incumbent upon the appellant, then as appellee, or I'm sorry, to file a supplemental brief. And certainly there's been no cross appeal under Supreme Court Rule 318 here. I submit to this court that issue is waived. It was not decided upon in the appellate court. They're asking you to affirm a reversal based upon a reason that was never decided upon in the appellate court, and that is just quite simply inappropriate. On its matter, this is, on its merits, this is not, certainly not a case of provocation. Neither side presented a scintilla of evidence of mutual combat, and certainly it doesn't rise to the level of substantial physical injury. What you have at most is a push that would certainly be out of proportion with using deadly force under the circumstances, and no case has come close to finding that an available second mitigated defense. It is actually a fallacy to say without a per se rule the province of the jury is invaded. There is no violation of any form of due process unless the evidence warrants it. So to simply make that blanket statement is to beg the question. Second degree murder, importantly, is a lesser mitigated offense of first degree murder. Therefore, it is the presence of a mitigating factor that is the defendant's burden to establish that mitigates that crime to something less than first degree murder. And certainly there are the cases, as in Billups and in Anderson, where there is absolutely no room to find, if you believed in those defendant's versions of offense, that it would be unreasonable. Turning to the specific facts of this case, it is significant that it was never once presented to the trial court that there was other evidence in the record to support an unreasonable belief in self-defense. And if you look at it and distill it down, the testimony of Topeka, and I don't need to repeat the profanities, but I think it is taking liberties with the record to say there was a stream of profanities. Once the defendant chooses to testify, you don't exact his testimony and say, oh, maybe he was exaggerating, let's fill in the blanks with the other evidence. You need to look at the evidence, something Topeka said, something some other witness said, maybe something the state presented to show that it was unreasonable, and you don't have that here. In fact, Topeka's testimony was so patently unreasonable, Learned Trial Counsel did not mention her once to that jury for a couple simple reasons. She completely undermined any testimony of self-defense in this case. Looking at her testimony at the best, you have a two-handed push, there is no weapon in your hand, and then a brief grabbing at the neck and a pushing downward. This business about choking, if you look at the record closely, that is the state's attorney on cross-examination that he had one hand to his neck to attempt to choke. To point out the preposterous nature of her testimony manufactured on the witness stand four years later after she fled the scene, never came forward, never presented any evidence, and suddenly for the first time has decided to attempt to corroborate a fantastic tale of some type of self-defense. She was looking right there, there was nothing else interesting going on in the street that day. Had she seen a gun, she would have been able to testify to it and told somebody so immediately. It was absolutely rejected as being nonsensical. So to enact a per se rule would be to invite juries to return verdicts that are not based upon the evidence but based upon speculation and to force judges to give cautionary instructions, and we ask that this court not do so. Thank you. Thank you. Case number 110283, People v. Melvin, Washington, is taken under advisement as agenda number two. Thank you.